Joseph INGLE, et al., Plaintiffs-Appellees, Cross-Appellants,

v.

DEPARTMENT OF JUSTICE, Defendant-Appellant, Cross-Appellee.

Nos. 81–5440, 81–5441.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 19, 1982.

Decided Jan. 17, 1983.

---

Marleigh D. Dover (argued), Leonard Schaitman, U.S. Dept. of Justice, Appellate Staff-Civil Div., Washington, D.C., for defendant-appellant, cross-appellee.

Larry D. Woods, Woods, Bryan, Woods & Watson, William J. Marett, Jr. (argued), Nashville, Tenn., for plaintiffs-appellees, cross-appellants.

Before KENNEDY and KRUPANSKY, Circuit Judges, and CECIL,* Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

The present action involves cross-appeals by the plaintiff Joseph B. Ingle (Ingle) and the defendant Department of Justice (Justice) from an order of the United States District Court for the Middle District of Tennessee which held, following an *in camera* inspection, that various specific statutory exemptions asserted by Justice to the disclosure of portions of 26 pages of documents to Ingle pursuant to a Freedom of Information Act (FOIA), 5 U.S.C. § 552, request were properly invoked, but that Justice's characterization of two additional documents incorporating 28 pages as beyond the scope of Ingle's request was improper. Ingle appeals from that portion of the order upholding the statutory exemptions. Justice however does not directly contend that the district judge erred in reclassifying the two documents as being within the scope of the request; rather, the government seeks a remand to permit it to delete those portions of the two additional documents which it contends are exempt. Ingle, moreover, seeks attorney fees as a prevailing party.

The salient facts of this action are straight-forward. Ingle is the director of the Southern Coalition on Jails and Prisons, Inc. (SCJP), an organization that describes itself as "a group of ministers and lay people carrying on a ministry to visit prisoners and proclaim liberty to captives." On November 1, 1978, Ingle made a FOIA demand upon Justice for "any and all reports on myself and any organization I am a member of (the Committee of Southern Churchmen, Southern Prison Ministry, The Southern Coalition on Jails and Prisons)."

Justice responded by stating that 366 pages of documents were located, of which number 325 pages were withheld in their entirety, with the remaining 41 pages supplied with deletions made pursuant to various exemptions. Ingle perfected an administrative appeal which was denied.

Ingle thereupon filed an action in district court seeking, *inter alia,* an order to produce all of the documents in their entirety, an expedited hearing and an award of attorney fees. Justice filed with the Court three affidavits of FBI Special Agents who had reviewed the documents and a motion for summary judgment asserting that the affidavits sufficiently demonstrated compliance, as a matter of fact, with exemptions (b)(1), (b)(7)(C) and (b)(7)(D) of the FOIA, 5 U.S.C. § 552.

On January 16, 1981, the district judge ruled that the statute required *in camera* inspection of all documents to determine if the exemptions were proper. The district court further stated that because the affidavits were "conclusory," the agency's judgment was not entitled to substantial weight and held that "the documents must be submitted to this Court in their entirety for *in camera* inspection." It must be noted that neither party has appealed from the decision of the district court to conduct an *in camera* inspection.

---

* Honorable Lester L. Cecil participated in oral argument but due to his death on November 26, 1982 took no part in the opinion.

Subsequently, Justice released 307 pages of the formerly withheld documents which were copies of a magazine apparently published by SCJP. The remaining 59 pages were submitted for *in camera* review.

On March 9, 1981, the district judge issued the following Memorandum and Order, here set forth in its entirety:

Documents 10 and 11 contain huge deletions. The reason given is that the material is "outside the scope." Apparently this reference means that the material is outside the scope of plaintiff's request. As noted in this Court's previous memorandum, plaintiffs have asked the Department of Justice for "any and all reports on myself and any organization I am a member of (the Committee of Southern Churchmen, Southern Prison Ministry, The Southern Coalition on Jails and Prisons)." The agency could contend that plaintiffs' request is not specific enough for it to obtain the material relevant to the request. Once the material is discovered, however, defendant cannot refuse to disclose it unless a specific statutory exemption is applicable. Even though no specific statutory exemption is cited to this Court regarding Documents 10 and 11, the Court has scrutinized the documents to see whether a statutory exemption would be applicable. Having found no exemption applicable to the material withheld in Documents 10 and 11, defendant must release this material to plaintiffs.

Pursuant to this Court's memorandum and order of January 16, 1981, defendant has submitted the requested documents for in camera inspection. Having reviewed the documents and the supplementary affidavits, the Court concludes that defendant is entitled to withhold the matter for which specific statutory exemptions have been cited. The material that defendant has designated as "outside the scope" must be released.

The Court has before it ten documents, numbered Document 1 through 11 (no Document 8 was submitted), for inspection under this Freedom of Information Act request. In Documents 1, 2 and 3,

defendant does not assert any statutory exemption and apparently is willing to release the documents to plaintiffs. In Document 4 defendant asserts two exemptions under 5 U.S.C. § 522(b)(7)(C) [hereinafter cited as Exemption b7c]. The assertion of this exemption for these items is valid and therefore disclosure need not be made of the deleted items in Document 4.

Document 5 is lengthy and defendant asserts numerous statutory exemptions to disclosure. Exemptions under sections (b)(1) and (b)(7)(D) are asserted as well as Exemption b7c. The Justice Department has been careful to claim the minimum amount of material exempt. The bulk of the exempted matter in this document mentions sources and source references. Other exemptions concern matters that are within the personal privacy of the person named and should be of no concern to plaintiffs. The Court has reviewed these requested exemptions in detail and is satisfied that all are validly asserted. Therefore, all matters deleted from Document 5 need not be disclosed to plaintiffs.

Document 6 contains numerous b7c exemptions. These exemptions are validly asserted and defendant need not disclose this material. No exemptions are asserted in Document 7 and 9; Document 8 was not submitted for in camera review. (Apparently this omission was merely a clerical error on defendants' part because Document 8, as insignificant as it was, was submitted to the Court in a prior package.)

In sum, of the 59 pages submitted for inspection, 5 pages, denominated as Documents 1, 2, 3, 7 and 9, which were merely cover letters transmitting copies of the magazine and which were not asserted to be exempt at the time of review, were ordered released and are not now at issue. Documents 10 and 11, totalling 28 of the remaining 54 pages, were ordered released in full and the final 26 pages were released with deletions.

Subsequent to this order, Justice filed a Fed.R.Civ. P. 59(e) motion to "allow the Government to delete any exempted materials from documents 10 and 11" before disclosing them to Ingle. The government argued that it had properly decided not to index and submit affidavits addressing the exempt portions of Documents 10 and 11 until the disposition of threshold issue of whether the documents were within the scope of the request. Justice further urged that upon concluding that the documents were within the scope of Ingle's FOIA request, the district court should have permitted the FBI to apply its specialized knowledge and assert any statutory exemptions applicable to portions of Documents 10 and 11. The district judge denied this motion in a margin entry dated April 10, 1981.

■ As noted hereinabove, the decision of the trial judge to conduct an *in camera* review has not been directly challenged by either instant party. However, the examination by the trial court of the 59 pages of documents is a threshold consideration to this Court's application of the "clearly erroneous" test to the conclusions of the district judge. Simply stated, where the trial court relies solely upon a personal *in camera* inspection of documents as the basis for its decision evaluating FOIA exemptions, an appellate court may review such conclusion only by conducting a similar *in camera* review of the same documents. As stated by the D.C. Circuit in the polestar FOIA opinion of *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974):

> Ordinarily, the facts relevant to a dispute are more or less equally available to adverse parties. In a case arising under the FOIA this is not true, as we have noted, and hence the typical process of dispute resolution is impossible. In an effort to compensate, the trial court, as the trier of fact, may and often does examine the document *in camera* to determine whether the Government has properly characterized the information as exempt. Such an examination, however, may be very burdensome, and is necessarily conducted

without benefit of criticism and illumination by a party with the actual interest in forcing disclosure. In theory, it is possible that a trial court could examine a document in sufficient depth to test the accuracy of a government characterization, particularly where the information is not extensive. But where the documents in issue constitute hundreds or even thousands of pages, it is unreasonable to expect a trial judge to do as thorough job of illumination and characterization as would a party interested in the case.

> *The problem is compounded at the appellate level.* In reviewing a determination of exemption, an appellate court must consider the appropriateness of a trial court's characterization of the factual nature of the information. Frequently trial courts' holdings in FOIA cases are stated in very conclusory terms, saying simply that the information falls under one or another of the exemptions to the Act. An appellate court, like the trial court, is completely without the controverting illumination that would ordinarily accompany a request to review a lower court's factual determination; *it must conduct its own investigation into the document* The scope of inquiry will not have been focused by the adverse parties and, if justice is to be done, the examination must be relatively comprehensive. Obviously an appellate court is even less suited to making this inquiry than is a trial court.

*Id.* at 824–825 (emphasis added).

It is for this reason that the D.C. Circuit, which is the forum most frequently confronting FOIA issues, developed a procedure characterized as the Vaughn Index whereby the government satisfies its burden of proof supporting claimed exemptions to disclosure with a detailed index of each paragraph or sentence sought to be withheld, cross-referenced to the government's statutory basis for the exemption. *Id.* at 826–828. Such detailed summaries permit the party seeking disclosure to knowingly argue for the release of the disputed information, and permit effective appellate re-

view; both results not easily accomplished in cases of *in camera* review.

Subsequent to *Vaughn I*, Congress in 1974 amended the FOIA investing the district court with discretion to conduct *in camera* inspections without the necessity of relying upon agency affidavits. However, the legislative intent, as expressed in the conference report, clearly reflected the sense of *Vaughn I* that *in camera* reviews were to be a secondary tool of FOIA enforcement:

> [t]he court may examine records *in camera* in making its determination under any of the nine categories of exemptions under section 552(b) of the law ... While *in camera* examinations need not be automatic, in many situations it will plainly be necessary and appropriate. *Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure.* The burden remains on the Government under this law. S.Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 6267, 6287–88 (Conference Report). (Emphasis added).

█ Precedent which followed *Vaughn I* and the 1974 FOIA amendments has evolved two major principles concerning *in camera* reviews: 1) such reviews are not generally favored for the reasons articulated in *Vaughn I;* and 2) full *in camera* reviews are appropriate in cases involving a very limited number of relatively brief documents.

The disabilities inherent in *in camera* review, first articulated in *Vaughn I,* have been restated by the D.C. Circuit in *Weissman v. CIA,* 565 F.2d 692, at 697 (1977) (*"In camera* inspections are burdensome and are conducted without the benefit of an adversary proceeding."); *Mead Data Central, Inc. v. U.S. Department of Air Force,* 566 F.2d 242, at 250, n. 10 (1977) (*"In camera* inspection of disputed documents places a very burdensome demand on federal trial courts * * * [and] also creates problems for appel-

late review."); *Ray v. Turner,* 587 F.2d 1187, at 1195 (1978) (*"In camera* inspection requires effort and resources and therefore a court should not resort to it routinely on the theory that 'it can't hurt.' "): *But see Allen v. CIA,* 636 F.2d 1287 (D.C.Cir.1980).

Other circuits addressing the role of *in camera* review in FOIA cases have tended to emphasize the need for restraint which is at the core of *Vaughn I.* The Fifth Circuit in *Stein v. FBI,* 662 F.2d 1245, 1254 (5th Cir.1981) explicitly endorsed the initial use of a Vaughn Index, which should be the *sole* basis of decision where the descriptions contained therein are "reasonably specific"; such information as is described "falls logically within the claimed exemption"; and there is no contrary evidence or "evidence of agency bad faith." The court limited *in camera* review to instances where the public record is insufficient and public disclosure of a Vaughn Index would "compromise legitimate security interests." *Id.* at 1254.

The Second Circuit, in *Brown v. FBI,* 658 F.2d 71, 74 (2nd Cir.1981) restated its position on *in camera* review first articulated by that court in *Lead Industries Ass'n v. OSHA,* 610 F.2d 70 (2nd Cir.1979):

> It is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an *in camera* examination to look for segregable non-exempt matter ... Where it is clear from the record that an agency has not exempted whole documents merely because they contained some exempt material, it is unnecessary and often unwise to undertake such an examination.

The Third Circuit, likewise, has recently reaffirmed its support of the Vaughn Index as the initial FOIA enforcement tool. *Lame v. U.S. Dept. of Justice,* 654 F.2d 917, 921 (3rd Cir.1981) *citing Ferri v. Bell,* 645 F.2d 1213, 1222 (3rd Cir.1981), *reh. on other grnds.,* 671 F.2d 769 (1982); *Coastal States Gas Corp. v. Dept. of Energy,* 644 F.2d 969 (3rd Cir.1981).

The Eighth Circuit is perhaps the most clearly committed to the restrained use of *in camera* review in FOIA cases. In *Bar-*

*ney v. IRS,* 618 F.2d 1268, 1272 (8th Cir. 1980), the court stated:

> We have previously indicated that the role of *in camera* inspection should be limited as it is "contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence openly produced in court." *Cox v. United States Department of Justice,* 576 F.2d 1302, 1311 (8th Cir.1978).
>
>> A court's primary role * * * is to review the adequacy of the affidavits and other evidence presented by the Government in support of its position * * *. If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.
>
> *Id.* at 1312.

The Ninth Circuit, in *Church of Scientology, etc. v. U.S. Dept. of Army,* 611 F.2d 738, 743 (9th Cir.1979) alludes to, but does not fully specify, the problems of *in camera* inspection:

> We cannot stress strongly enough, however, that the district court's inspection prerogative is not a substitute for the government's burden of proof, and should not be resorted to lightly. In cases involving requests for hundreds of documents, no trial court can reasonably be expected to wade through a mass of exhibits *in camera.* We also underscore similar limitations upon *in camera* inspection at the appellate level.

In addition to these circuit opinions, there is persuasive *dicta* in the Supreme Court's decision in *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978) which states:

> The *in camera* review provision [of the FOIA] is discretionary by its terms, and is *designed to be invoked when the issue before the District Court could not be* *otherwise resolved;* it thus does not mandate that the documents be individually examined in every case. (Emphasis added).

A fair reading of existing case authority compels the conclusion that while *in camera* review is available, it is not the procedure primarily contemplated by the statute and, because of the attendant burdens on judicial economy, should be availed of with some restraint and in appropriate instances. Indeed, as noted by the Fifth Circuit during its discussion of discretionary *in camera* review in *Stein, supra,* 662 F.2d at 1252, it is "somewhat ironic that legislation intended to open up the workings of executive agencies incorporates a scheme of judicial review designed to be closed in large part not only to the public but to adverse parties."

It is important, therefore, to note that the trial court in the case at bar misconstrued the scope of *in camera* review, relying not upon the substantial, and growing body of precedent, cited hereinbefore, but specifically upon the concurring opinion in *Ray v. Turner, supra.* The trial court stated:

> On the basis of three affidavits of Special Agents who have read the requested documents and believe them properly classified as secret, defendant argues that the affidavits sufficiently demonstrate compliance with exemptions (b)(1), (b)(7)(C) and (b)(7)(D), so that the documents need to be neither disclosed nor produced for *in camera* inspection by the Court. *The statute, on the other hand, clearly contemplates judicial inspection.* 5 U.S.C. § 552(a)(4)(B). For exemption (b)(1) to permit nondisclosure, not only must the matter be "specifically authorized under criteria established by an Executive order to be kept secret," *id.* at § 552(b)(1)(A), but also must be *"in fact properly classified* pursuant to such Executive order," *id.* at § 522(b)(1)(B) (emphasis added).

In 1974 Congress intentionally amended the FOIA to provide for judicial review via *in camera* inspection of withheld documents. The amendments were provoked by the Supreme Court's decision in

*EPA v. Mink,* 410 U.S. 73, 35 L.Ed.2d 119, 93 S.Ct. 827 (1973), and the contemporaneous scandal in the White House. In *Ray v. Turner,* 587 F.2d 1187 (D.C.Cir. 1978), Judge Wright's concurring opinion recognized that Congress was worried about more than bad faith withholding of documents and that Congress believed that too much reliance on agency expertise was dangerous. *Id.* at 210–212 (Wright, J., concurring).[1]

[1] On the whole, this Court finds Chief Judge Wright's concurring opinion in *Ray v. Turner, supra,* at 1199–1222, to be the most persuasive and correct authority on the scope of review issue in exemption (b)(1) cases. Because virtually no Sixth Circuit authority exists on this issue, the logic of Judge Wright's opinion compels this Court's decision in this case.

(Emphasis added).

■ Although the district court in the instant case misapprehended the function of *in camera* review, this Court is persuaded that the decision to conduct an *in camera* inspection was not an abuse of discretion when considered in light of the following criteria by which a court properly exercises its discretion to examine FOIA materials *in camera.*

The primary factor substantiating discretionary review is the failure of a Vaughn Index to resolve the dispute. This seemingly self-obvious point bears emphasis in light of the lower court's belief that *in camera* inspection is the rule not the exception. The statute's legislative history and the Supreme Court's language in *Robbins Tire & Rubber, supra,* emphasize that no court should consider *in camera* review if a Vaughn Index can adequately resolve the issue.[1] *See e.g., Stein v. Dept. of Justice, supra,* 662 F.2d at 1253; *Brown v. FBI, supra,* 658 F.2d at 74; *Church of Scientology, etc. v. Dept. of Army, supra,* 611 F.2d at 742 (where a Vaughn Index is adequate, "the district court need look no further"). As noted by the Ninth Circuit in *Church of Scientology, supra,* this primary reliance

[1.] A Vaughn Index has been generally subject to critical comment in three areas: 1) the descriptions are not "reasonably specific"; 2) contrary evidence in the record casts doubt on the veracity of the descriptions; 3) the subject matter

upon agency-prepared indices and detailed summaries places the burden of proof to withhold a document squarely upon the government and precludes the likely shift or erosion of that burden which would occur if an agency simply "dumped" its file on the court for a *de novo* appraisal. 611 F.2d at 743.

It must be emphasized that the failure of a traditional Vaughn Index is not dispositive of the need for full *in camera* review; it is merely the trigger for further analysis. *Stephenson v. IRS,* 629 F.2d 1140 (5th Cir. 1980); *Church of Scientology, etc., supra,* 611 F.2d at 743 ("We stress again * * * that *in camera* inspection is a procedure which the trial court need invoke only where it finds inspection appropriate, in its discretion.") In such cases where an index and reasonably detailed descriptions cannot resolve the issue, courts have employed modified versions of total review *in camera* so as to ameliorate the limitations of a complete inspection. *See Ash Grove Cement Co. v. FTC,* 511 F.2d 815 (D.C.Cir. 1975) (random sample inspections); *Hayden v. National Security Agency/Central Security Service,* 608 F.2d 1381 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980) (*in camera* review of affidavits where public affidavits would compromise national security); *Stephenson v. IRS, supra,* 629 F.2d at 1145–46 (trial courts should consider "sanitized indexing, random or representative sampling *in camera* with the record sealed for review, oral testimony or combinations thereof").

In the instant case, the trial judge made a specific finding that the Vaughn Indices submitted by the government were insufficient. That finding is not contested on appeal and accordingly will not be disturbed. Although the district court did not specifically consider the sufficiency of the Vaughn material within the context of the foregoing analysis, this Court cannot con-

of the documents is such that they cannot be publicly summarized in any meaningful way. *See, e.g., Stein, supra* (cases cited therein); *Barney v. IRS, supra.*

clude upon the record that the judgment of insufficiency is plain error.

Having determined that the affidavits and index are insufficient, the decision to exercise a court's discretion to review material *in camera* ultimately involves consideration of the following factors: 1) *judicial economy*—every court on record has expressed significant concern about imposing a line by line review upon trial and appellate courts in resolving FOIA requests involving hundreds or thousands of documents; 2) *actual agency bad faith*—where it becomes apparent that the subject matter of a request involves activities which, if disclosed, would publicly embarrass the agency or that a so-called "cover up" is presented, government affidavits lose credibility; 3) *strong public interest*—where the effect of disclosure or exemption clearly extends to the public at large, such as a request which may surface evidence of corruption in an important government function, there may be a reason to give lesser weight to factors like judicial economy; 4) *the parties request in camera review*—obviously the court cannot be required to conduct a review upon demand, but a request would ameliorate concern that *in camera* inspection was precluding vigorous adversary proceedings or that a court was stepping into an area, as national security, which is the province of the Executive. *See, e.g., Allen, supra.*

■ In sum, a trial court should exercise its discretion to require *in camera* inspection only after attempting to adequately resolve the matter by a Vaughn Index *and* only after considering whether some other available procedure short of full *in camera* examination could resolve the identified difficulty with the original agency submission. Moreover, because of the serious implications of *in camera* proceedings, this Court endorses the Second Circuit's reasoning in *Lead Industries Ass'n v. OSHA, supra,* wherein it was adjudged to have been error for the trial court to order *in camera* inspection of some 540 pages "without hearing argument specifically addressed to that issue." 610 F.2d 70, at 87. Obviously oral

hearing would not be required in every case, but permitting the parties to argue the very factors delineated here would aid in the exercise of discretion, as would an opinion by the trial court wherein his reasoning was set forth. Further, the procedure outlined herein would permit effective review by this Court.

In applying the foregoing criteria to the case at bar, this Court observes that there are a relatively modest number of documents actually involved (54), although it must also be noted that the district court initially ordered *in camera* inspection under the belief that it would involve 366 pages of documents. Further, although no hearing was conducted, no party here seeks to assign error to the *in camera* inspection. Wherefore, this Court will, in this case, conclude that the trial court did not abuse its discretion in its conduct of an *in camera* review and will, accordingly, proceed to the merits of the instant case.

■ In reviewing determinations made under the FOIA an appellate court is confronted with two responsibilities. Initially, the reviewing court must establish that the district court had an adequate factual basis for its decision. Secondly, the court on appeal must ascertain upon the factual foundation developed below if the conclusion of the trial court is clearly erroneous. *Stephenson v. IRS, supra,* at 1144; *Church of Scientology, etc. v. Dept. of Army, supra,* at 742.

On appeal, Ingle charged that the affidavits submitted by the government were ambiguous and insufficient in fact to provide an adequate basis for the trial judge to evaluate the claimed exemptions. Whatever the merits of appellant's assessment of the affidavits, once the trial court commenced a first-hand review of the documents themselves "[s]uch an inspection would determine whether the failure of the affidavit stemmed from mere inadvertence or from a truly overbroad reading of the exemption by the agency." *Irons v. Bell,* 596 F.2d 468, 471, n. 6 (1st Cir.1979). Accordingly, as noted by the Ninth Circuit in *Church of Scientology, etc. v. Dept. of*

*Army, supra,* even where the affidavits "were drafted in a somewhat conclusory fashion", by "viewing both the edited and unedited versions of the documents, the trial court had the opportunity to inspect [the] specific portions which the government claimed to be exempt from disclosure." 611 F.2d at 743. This Court, therefore, finds that the *in camera* review of a relatively modest number of pages provided the district court with an adequate factual basis for its decision.

▪ Upon this Court's inspection of the same documents, it is apparent that the district court was not clearly erroneous in upholding the claimed exemptions to Documents 4, 5 and 6. These documents were redacted to excise classified information related to national security, 5 U.S.C. § 552(b)(1),[2] and to delete the names of third parties and law enforcement agents contained in investigatory records compiled for law enforcement purposes. 5 U.S.C. § 522(b)(7)(C) and (D).[3]

Initially, this Court observes with respect to the national security exemption claimed pursuant to § 522(b)(1), that courts have long been required to accord substantial weight to an agency's affidavit concurring national security matters. *Taylor v. Dept. of Army,* 684 F.2d 99, 106–07 (D.C.Cir.1982). The agency's burden is to show that it followed proper classification procedures and that the document, by description, falls logically within the claimed exemption. *Hayden v. National Security Agency,* 608 F.2d 1381 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790

(1980). Moreover, courts must be aware "that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [*sic*] might occur as a result of public disclosures." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981) quoting S.Rep. No. 93–1200, 93d Cong., 2d Sess. 12 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 6267, 6290. Pertinent here is the observation made in *Halperin v. Central Intelligence Agency,* 629 F.2d 144, 150 (D.C.Cir.1980):

> We must take into account, however, that each piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself.

In the instant case, the government affidavits confirmed that the material was duly classified as "Confidential" by the proper Justice Department authority and that the information was, by generic description, logically encompassed by the classification criteria of Executive Order 12065. 3 C.F.R. 190 (1980). Moreover, the trial court examined the material and found the (b)(1) exemption properly claimed. Ingle's assertion that it was erroneous to sustain this exemption without proving that disclosure of the specific material here involved would damage national security both misapprehends the government's burden as developed in the authorities and is contrary to the recognized deference due the Executive branch

---

**2.** 5 U.S.C. § 522(b)(1) provides in pertinent part:

(b) This section does not apply to matters that are—

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

**3.** 5 U.S.C. § 552(b)(7) provides in pertinent part:

(b) This section does not apply to matters that are—

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would

(A) interfere with enforcement proceedings (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

in matters of national security. Moreover, the trial judge actually examined the complete document. The judgment below addressing the national security exemption herein is accordingly affirmed.

■ Similarly, this Court upholds the decision to delete, pursuant to exemptions (b)(7)(C) and (D), the names of FBI agents and persons interviewed by the FBI during law enforcement investigations. Ingle essentially contends that the exemptions must fail because the government did not prove it extended confidentiality to the interviewees as a condition of the interview and that no prosecution was apparently ever initiated against the appellant as a result of the investigation.

The Seventh Circuit in *Miller v. Bell*, 661 F.2d 623 (7th Cir.1981) has recently re-emphasized the intent of the Congressional drafters of the 1974 amendments to preserve the FBI's ability to elicit continued public cooperation in Bureau interviews and concluded:

> Unless there is evidence to the contrary in the record, we believe such promises of confidentiality are inherently implicit in FBI interviews conducted pursuant to a criminal investigation.

661 F.2d at 627. Further, although this Court would not presume that disclosing names of FBI sources to Ingle would subject those sources to intrusion or harassment, it seems clear that it is properly the right of those sources themselves to waive any protection afforded by cooperating with the FBI and "not the role of the FBI to suffer them to do so". *Id.* at 628. *See also Conoco, Inc. v. Dept. of Justice*, 687 F.2d 724, 730 (3rd Cir.1982). It is, of course, well established that FBI agents themselves have the right to be protected against public disclosure of their participation in law enforcement investigations pursuant to exemption (b)(7)(C). *Miller, supra; Nix v. United States*, 572 F.2d 998 (4th Cir.1978).

■ Moreover, it is now settled that in order to invoke exemption (b)(7)(C) it is not necessary that the government actually initiate a prosecution. *Bast v. Dept. of Justice*, 665 F.2d 1251 (D.C.Cir.1981); *Miller,*

*supra. See also Founding Church of Scientology v. Regan*, 670 F.2d 1158 (D.C.Cir. 1982) (regarding exemption (b)(7)(D)). Accordingly, the remaining exemptions claimed for Documents 4, 5 and 6 are upheld as not clearly erroneous.

■ The essence of the government's cross-appeal is that the district court abused its discretion in ruling that Documents 10 and 11 contained no exempt material prior to affording the government an opportunity to meet its burden of establishing exemptions. The government initially asserted below that the documents were beyond the scope of Ingle's request. The trial court, during the *in camera* review, concluded preliminarily that the request was broad enough to encompass Documents 10 and 11. However, without then extending Justice an opportunity to present any applicable exemptions, a presentation which would have been premature prior to resolution of the threshold issue that the material was within the scope of the case *sub judice,* the trial court undertook to examine the documents with an eye to discerning for itself the presence of any potentially exempt material.

*In camera* review does not suspend the adversary system nor abrogate the government's role of asserting any applicable exemptions. It is, at a minimum, an abuse of discretion for a trial court to become the government's advocate behind closed doors while the petitioner is left without knowledge of which exemptions are being advanced or why they are being accepted or rejected. Similarly, when a trial court seeks to discover potentially exempt material *sua sponte,* the government is left without an opportunity to apply its specialized knowledge of the contents of a document and its origin, so as to illuminate matter which would properly be withheld though is not immediately obvious to an untrained eye.

Further, upon direct review of Documents 10 and 11, this Court notes that the material therein resulted from an investigation of the same type of volatile racial

prison riot which formed the basis for exempting from disclosure the names of informers and guards in *Nix, supra,* who were judged by the Fourth Circuit to be in danger of reprisals if their participation in a law enforcement inquiry were made public. Accordingly, Documents 10 and 11 are remanded with instructions to permit the government to advance its claims for exemption.

Appellant's claim for attorney fees which was neither presented to, nor passed upon by, the trial court is accordingly not properly before this Court.

The instant case is therefore affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.