**HEIGHTS COMMUNITY CONGRESS, Plaintiff-Appellant,**

v.

**VETERANS ADMINISTRATION, Defendant-Appellee.**

No. 82–3450.

United States Court of Appeals, Sixth Circuit.

Argued June 24, 1983.

Decided April 23, 1984.

Edward G. Kramer, argued (Lead Counsel), Vincent T. Lombardo, Cleveland, Ohio, for plaintiff-appellant.

Randolph Baxter, argued, Asst. U.S. Atty., Cleveland, Ohio, for defendant-appellee.

Before EDWARDS and KRUPANSKY, Circuit Judges, and REED, District Judge.*

KRUPANSKY, Circuit Judge.

This is an appeal by the Heights Community Congress (HCC) from a district court order upholding a Veterans Administration (VA) decision not to disclose the property address, the loan amount and the identity of the lender on VA insured loans granted in Cleveland Heights, Ohio, which request was made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The district judge concluded that the information, if relevant, would constitute a "clearly unwarranted invasion of personal privacy" and so was exempt from disclosure under 5 U.S.C. § 552(b)(6) (exemption (b)(6)).

The underlying facts are straightforward and uncontested. HCC is an umbrella organization of religious, educational and civic groups in Cleveland Heights, a contiguous suburb of Cleveland. HCC was created in the 1970's, in part, to deal with the rapid influx of black residents from nearby city neighborhoods which had themselves undergone a significant alteration in racial composition. In 1980, HCC filed the present FOIA request with the VA to determine if black veterans were receiving equal access to federal loan guarantees and to further investigate the possibility that lenders and realtors were manipulating the VA loan program so as to steer white and black veterans into specific areas of Cleveland Heights. The initial FOIA request sought information by race and census tract as to VA guaranteed loans during the period 1975–1979 as well as attorney fees. The VA, which did not maintain the records

---

* Hon. Scott Reed, United States District Judge for the Eastern District of Kentucky, sitting by designation.

by census tract but by zip code, provided the data for the four zip codes which together included all of Cleveland Heights, but which also encompassed portions of surrounding cities.

The HCC thereupon amended its FOIA request to confine the inquiry to Cleveland Heights, and demanded the individual Residential Appraisals (Form 26–1803) and Certificates of Reasonable Value (Form 26–1805) utilized for each loan granted in Cleveland Heights. The VA released the above-cited forms but deleted the name and social security number of the recipient, the property address, the amount of the loan and the identity of the lender. Upon cross-motions for summary judgment, the district judge determined that the statistical information provided by the VA according to zip code, and the data from the redacted forms, were sufficient to satisfy HCC's purpose, and that release of further information which would identify individual veterans was a clearly unwarranted invasion of personal privacy. The HCC conceded that names and social security numbers could be redacted, but insisted on disclosure of the property addresses as well as the value of the loans and identities of the lenders.

Exemption 6 provides that the disclosure requirements of the FOIA do not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This section has been held to create a two-part test: (1) does the file include personnel, medical or "similar" data; and (2) if so, would disclosure be a "clearly unwarranted" invasion of personal privacy. *United States Dept. of State v. Washington Post Co.*, 456 U.S. 595, 601–02, 102 S.Ct. 1957, 1961, 72 L.Ed.2d 358 (1982).

■ In addressing the threshold requirement, the Supreme Court in *Washington Post, supra*, held that a "similar" file was not to be construed as encompassing "a narrow class of files containing only a discrete kind of personal information." *Id.* 456 U.S. at 601–02, 102 S.Ct. at 1961.

Rather, Exemption 6 was to be applied to "any Government records on an individual which can be identified as applying to that individual." *Id.* As stated by the Supreme Court, Congress intended that this "general exemption" would, in turn, be "held within bounds" by the second requirement of Exemption 6, which precludes release of such individual information when it would constitute a "clearly unwarranted invasion of personal privacy." *Id.* 456 U.S. at 599–601, 102 S.Ct. at 1960.

In *Dept. of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), the Supreme Court mandated that the court balance the individual's right to privacy against disclosure's benefit to the public interest in determining if the disclosure would result in a "clearly unwarranted invasion of personal privacy":

Congressional concern for the protection of the kind of confidential personal data usually included in a personnel file is abundantly clear. But Congress also made clear that nonconfidential matter was not to be insulated from disclosure merely because it was stored by an agency in its "personnel" files. Rather, Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act "to open agency action to the light of public scrutiny." The device adopted to achieve that balance was the limited exemption, where privacy was threatened, for "clearly unwarranted" invasions of personal privacy.

Both House and Senate Reports can only be read as disclosing a congressional purpose to eschew a blanket exemption for "personnel ... and similar files" and to require a balancing of interests in either case. Thus the House Report states, H.R.Rep. No. 1497, p. 11: "The limitation of a 'clearly unwarranted invasion of personal privacy' provides a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Govern-

ment information by excluding those kinds of files the disclosure of which might harm the individual." Similarly, the Senate Report, S.Rep. No. 813, p. 9, states: "The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information."

425 U.S. at 372, 96 S.Ct. at 1604.

In performing the balancing test, the clear majority of circuits have employed a two prong approach: (1) identification of the privacy interest at stake; and (2) specification of the public interest in disclosure. *See Madeira Nursing Center, Inc. v. N.L. R.B.,* 615 F.2d 728, 730 (6th Cir.1980):

> The central inquiry is whether public access to the information * * * is tantamount to an invasion of privacy; if so we ask whether such an invasion is justified by any countervailing public benefit from disclosure.

*Accord, Washington Post Corp. v. U.S. Dept. of H.H.S.,* 690 F.2d 252, 261 (D.C.Cir. 1982); *Harbolt v. Dept. of State,* 616 F.2d 772, 775 (5th Cir.1980); *Wine Hobby USA, Inc. v. IRS,* 502 F.2d 133, 137 (3rd Cir. 1974); *Rural Housing Alliance v. U.S. Dept. of Agriculture,* 498 F.2d 73, 77 (D.C. Cir.1974). *But see Robles v. EPA,* 484 F.2d 843, 847 (4th Cir.1973). In addition, it has been held in the Ninth and D.C. Circuits that the balancing test may include consideration of "whether other sources of information might suffice." *Rural Housing Alliance, supra* at 77; *Church of Scientology v. Dept. of Defense,* 611 F.2d 738, 746 (9th Cir.1979). The burden of proof is on the government to justify the exemption. *Ingle v. Dept. of Justice,* 698 F.2d 259, 264 (6th Cir.1983). Further:

> In reviewing determinations made under the FOIA an appellate court is confronted with two responsibilities. Initially, the reviewing court must establish that the district court had an adequate factual basis for its decision. Secondly, the

court on appeal must ascertain upon the factual foundation developed below if the conclusion of the trial court is clearly erroneous.

*Ingle,* 698 F.2d at 267.

■ Initially it is readily apparent, and not contested by the parties, that the record below, which was developed on cross-motions for summary judgment, is an adequate factual basis for resolving the instant matter. Further, it is equally clear and uncontested that the property appraisal forms and certificates of reasonable value are, in this case, within the "similar file" ambit of Exemption 6. Accordingly, the issue at bar is the district court's resolution of the balancing test required to determine the propriety of disclosing the personal data involved.

The initial element of the balancing test directs an inquiry into the nature of the privacy right at issue. Accordingly, in the matter at bar, it must be initially determined what personal privacy interests inhere in the property addresses of veterans who obtained loans. Obviously, an address is a record "which can be identified as applying to [an] individual". *Dept. of State, supra,* 496 U.S. at 601–02, 102 S.Ct. at 1961. Moreover, as the Third Circuit noted in *Wine Hobby, supra,* "there are few things which pertain to an individual in which his privacy has traditionally been more respected than his own home." 502 F.2d at 137. The importance of the right to privacy in one's address is evidenced by the acceptance within society of unlisted telephone numbers, by which subscribers may avoid publication of an address in the public directory, and postal boxes, which permit the receipt of mail without disclosing the location of one's residence. These current manifestations of the ancient maxim that "a man's home is his castle", *see Rowan v. Post Office,* 397 U.S. 728, 737, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736 (1970), support the trial court's identification of an important privacy interest in the addresses sought.

The second element of the balancing test requires consideration of the public inter-

ests asserted by HCC as justification for release of the addresses in controversy. The first of HCC's claimed public interests is purportedly to protect the rights of minority veterans to receive their benefits. Although not cited by the district court, assertions of a public interest in merely "monitoring" the operation of a federal program, without more, have not been viewed favorably by the courts. *See Miller v. Bell*, 661 F.2d 623, 630 (7th Cir.1981); *Brown v. FBI*, 658 F.2d 71, 76 (2d Cir. 1981). Further, the district judge specifically concluded that the data already released permitted a statistical comparison between white and black veterans sufficient to "prove that minorities have not been discriminately (sic) denied those benefits."

The second public purpose asserted by HCC is to determine if VA loans have been manipulated to resegregate Cleveland Heights through racial steering. Bearing in mind that at this stage of the balancing test HCC must only identify a legitimate public purpose which would be served by disclosure, there is little doubt that an investigation of steering is a legitimate public interest. Racial steering, and the destabilizing segregation which can result, have been recognized by the Supreme Court as serious public issues. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

The initial appearance of propriety of HCC's public interest claim thereupon requires exposure to the final requirement of the test, namely, to balance the privacy interest of persons in their home address against the public interest in preventing racial steering in real estate. The district court here concluded that the addresses, loan amounts and lender identifications were "surplusage", and further concluded that any manipulation of the VA loan program in Cleveland Heights could be detected from a statistical table reflecting the aggregate of all loans made throughout the entire city.

In fact, it is doubtful that simply comparing the total amount loaned to blacks in the geographical boundaries of Cleveland Heights with the city-wide aggregate of loans advanced to whites would disclose the existence of real estate steering within the city. The evidence adduced by HCC, and unrebutted by the government, is plain that steering is a phenomenon whereby racial groups are concentrated in, or dispersed from, very specific neighborhoods or areas. Such practices, while originating in particular geographical districts, can have the effect of resegregating the entire city, over time, by preventing the development of stable, integrated neighborhoods.

However, the mere fact that HCC cannot utilize in its study the composite statistics provided by the VA does not compel release of the information herein requested. HCC's demonstrated public interest must nevertheless be weighed against the previously described privacy interest in an individual's address. In balancing the competing interests, it is apparent that release of the requested information would subject a veteran, who is himself not suspected of any wrongdoing, to involuntary personal involvement in HCC's investigation of steering. Even if HCC did not itself attempt to link addresses to specific veterans, any realtor or lender accused of steering by evidence compiled from individual VA loan reports could, if inclined to do so, certainly seek to examine the reports and counter the inference of steering by interrogating the individual buyers of the identified property. Holding a person's privacy hostage in this fashion is contrary, as the Chief Justice said in *Rowan, supra,* to the basic right in this nation simply to be left alone. Certainly nothing prevents HCC from publicly advertising its investigation and requesting any VA loan recipient who desires to cooperate with HCC to come forward if he so elects, or pursuing other less controversial avenues to obtain the desired information.

The Court is accordingly constrained to conclude that the ultimate conclusion of the trial court was not clearly erroneous and that the redacted information is protected by Exemption 6.

HCC here further argues that it is entitled to the addresses because 38 U.S.C. § 3301(f)(1) mandates disclosure of otherwise confidential VA information to an organization "directly connected with the conduct of [veterans] programs and the utilization of [veterans] benefits." The simple fact is that HCC has no *direct* connection with aiding veterans such as the Red Cross or the American Legion, and this section, by its ordinary meaning, is inapplicable to the instant matter.

It is also asserted that 38 U.S.C. § 3301(c)(2) and 38 C.F.R. § 1.512(b)(1) require full release of VA appraisal reports or reasonable value certificates "to any person who applies". As the District Court properly noted, this section is expressly made subject by 38 U.S.C. § 3301(j) to the FOIA and the Privacy Act so that "any disclosure" thus authorized must be made pursuant to the FOIA. HCC's interpretation of the disclosure requirement is selective and inapposite.

Finally, the appellant argues that somehow the "public purpose" of integration must here override the balancing test of the FOIA. This is simply an argument as to the manner in which the balancing test should be applied, not a *substitute* for the test. There is no authority for the proposition that furtherance of any public purpose, however salutary, may suspend completely the statutory mandate of the FOIA.

Wherefore, the decision of the district court is hereby affirmed.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge, concurring in part and dissenting in part.

I think the majority's opinion fairly states the issues in this case and I concur in their result, with the exception of the failure to meet appellant's request for information which would serve to prove or disprove whether or not the VA Home Loan Guaranty Program was being manipulated to promote housing segregation. Specifically I agree with my colleagues that the names of individual veterans and their addresses would tend to invade personal privacy of veterans taking advantage of the program.

What I do not understand is the reluctance of the agency to release information pertaining to lenders and amounts of mortgage loans and to furnish numbers and amounts of such loans in at least a reasonable number of particular blocks which appellants might designate. The Supreme Court has pointed out "that Congress considered [fair housing] to be of the highest priority" in *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 211, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972).

I would remand this case with instructions to the Veterans Administration to cooperate with plaintiff in devising the reasonable spot check procedure just referred to.