**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 5**

**v.**

**UNITED STATES DEPT. OF HOUSING AND URBAN DEVELOPMENT and Samuel R. Pierce.**

**Appeal of U.S. DEPT. OF HOUSING AND URBAN DEVELOPMENT & Samuel R. Pierce.**

**No. 87–3656.**

United States Court of Appeals, Third Circuit.

Argued March 17, 1988.

Decided July 20, 1988.

J. Alan Johnson, U.S. Atty., Richard K. Willard, Asst. Atty. Gen., Leonard Schaitman, Christine R. Whittaker (argued), Attys., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for appellant.

Betty Ora Grace Mesler (argued), Gatz, Cohen, Segal and Koerner, Pittsburgh, Pa., for appellee.

Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Counts, P.C., Washington, D.C., for amicus curiae International Broth. of Elec. Workers, AFL–CIO.

Before STAPLETON, MANSMANN, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

In this case arising under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982), the United States Department of Housing and Urban Development (HUD) appeals from a summary judgment requiring it to release to the International Brotherhood of Electrical Workers, Local Union No. 5 (Union), the names, addresses, and Social Security numbers of nonunion employees working for a federal contractor. We have jurisdiction under 28 U.S.C. § 1291 (1982). Because we find that the public interest in disclosure is not clearly outweighed by the privacy interest in the names and addresses, but is clearly outweighed by the privacy interest in the Social Security numbers, we will affirm in part and reverse in part the judgment of the district court.

### I.

The facts in this case are not disputed. The Davis–Bacon Act, 40 U.S.C. § 276a et seq. (1982), requires that all laborers and mechanics working on federally funded construction projects be paid not less than the prevailing wage in the locality in which the work is performed. The Davis–Bacon Act is enforced in part through the Copeland Act, 40 U.S.C. § 276c (1982), which requires federal contractors to submit weekly payroll records to the Government.

On November 19, 1985, the Union sent a written request to HUD's Pittsburgh office for copies of such payroll reports submitted to HUD by M & K Electrical Company (M & K), a nonunion subcontractor hired to perform work on a housing project that receives direct loan financing from HUD. The Union sought the payroll information to monitor M & K's compliance with the Davis–Bacon Act and HUD's enforcement of the Act.

On December 5, 1985, in response to the Union's request, HUD released the payroll records, which included the employees' work classifications, hours worked, rates of pay, and gross and net pay levels. HUD deleted, however, the employees' names, home addresses, and Social Security numbers, citing Exemption 6 to FOIA, 5 U.S.C. § 552(b)(6) (1982).

The Union appealed the decision to withhold the names, addresses, and Social Security numbers to HUD's General Counsel, who affirmed the denial of the requested information. The Union then brought this action. Both parties moved for summary judgment. The court granted the Union's motion and denied HUD's motion. This appeal followed. Our scope of review of the district court's interpretation of Exemption 6 is plenary.

### II.

FOIA requires federal agencies to make information in their possession available to the public unless the information falls under one of the enumerated exemptions, which are to be narrowly construed. *United States Dep't of Justice v. Julian,* — U.S. —, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988). Exemption 6 covers "personnel ... files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1982). There is no dispute that the names, addresses, and Social Security numbers contained in the payroll records are "files" within the meaning of Exemption 6. *See United States Dep't*

*of State v. Washington Post Co.*, 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982); *United States Dep't of Navy v. FLRA*, 840 F.2d 1131, 1135 (3d Cir.1988).

 We recently summarized the appropriate analysis under Exemption 6 in *Dep't of Navy*, in which we upheld the release to a union for collective bargaining purposes of names and addresses of bargaining unit members employed by a federal agency. The analysis requires us to determine whether the information sought is subject to privacy protection and, if so, whether the invasion of privacy is "clearly unwarranted." This inquiry involves a balancing of the public interest served by disclosure against the harm resulting from the invasion of privacy. In striking this balance, the court must keep in mind that there is a presumption in favor of disclosure. 840 F.2d at 1135. In addition, the agency bears the burden of proving an exemption from the disclosure requirements. *Committee on Masonic Homes of R.W. Grand Lodge v. NLRB*, 556 F.2d 214, 218–20 (3d Cir.1977).

 We consider first whether the Social Security numbers of M & K's employees fall under Exemption 6. The employees have a strong privacy interest in their Social Security numbers. Congress has recognized this privacy interest by making unlawful any denial of a right, benefit, or privilege by a government agency because of an individual's refusal to disclose his Social Security number. Privacy Act of 1974, Pub.L. 93–579, § 7, 88 Stat. 1896, 1909 (1974), *reprinted in* 5 U.S.C. § 552a note (1982). Moreover, in its report supporting the adoption of this provision, the Senate Committee stated that the extensive use of Social Security numbers as universal identifiers in both the public and private sectors is "one of the most serious manifestations of privacy concerns in the Nation." S.Rep. No. 1183, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 6916, 6943.

The Union argues that, unlike a government agency, it would not be able to make use of the Social Security numbers to invade the privacy of the employees because it does not have access to government records. Although the Union is certainly less likely than a government agency to be able to use the numbers to gain further information on the employees, it is not inconceivable that the Union could misuse this information. Moreover, once a number is public knowledge, it could wind up in anyone's hands.

Against this privacy interest, the Union has offered no public interest that would be furthered by the release of the Social Security numbers. Indeed, counsel for the Union conceded at oral argument that these numbers were not necessary to achieve any legitimate purpose. Faced with an identifiable privacy interest and no countervailing public interest, we must conclude that the release of the Social Security numbers would constitute a clearly unwarranted invasion of privacy and is therefore barred by Exemption 6.

 The names and addresses present a more difficult issue, however. The release of the names and addresses implicates several privacy concerns. First, as this court recently reaffirmed, "individuals generally have a meaningful interest in the privacy of information concerning their homes which merits some protection." *Dep't of Navy*, 840 F.2d at 1136. In particular, "individuals have some privacy interest in their home addresses," although "the invasion of privacy effected by such disclosure is not as serious as it would be by the disclosure of more personal information." *Id.* Second, the employees have a privacy interest in their salaries. This interest is not as great for employees of federal contractors as for other employees, however, since the Davis–Bacon Act itself requires the posting of wage scales at the job site. 40 U.S.C. § 276a(a). Although it is true that the posted wage scales link wages with positions rather than names, thereby preserving some degree of privacy in salary levels, the posting nevertheless reduces the workers' reasonable expectation of privacy in their salaries.

HUD argues further that the release of names in this case reveals that these workers have chosen to work for a nonunion

employer. But the mere fact that an employee works for a nonunion employer does not imply that the employee does not favor unionization either at his workplace or in general. This case is thus unlike *Masonic Homes,* in which we upheld under Exemption 6 the NLRB's refusal to release to an employer union authorization cards. In *Masonic Homes,* the very purpose of the authorization cards was to indicate a preference for unionization; thus, disclosure necessarily would have infringed a right to a private choice.

On the other side of the balance, the Union asserts that the public interest in disclosure is to enable the Union to monitor M & K's compliance with, and HUD's enforcement of, the Davis–Bacon Act. The Supreme Court has stated that in balancing interests under Exemption 6, the basic public interest purpose of FOIA is "to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). Moreover, we have rejected the "crabbed view" that the public interest for Exemption 6 purposes is limited to an interest in the operation of federal agencies. *See Dep't of Navy,* 840 F.2d at 1136. In *Dep't of Navy,* we looked to Congress' expression of the public interest reflected in a statute, in that case the federal labor act. *See id.* at 1136–37.

In this case, Congress' expression of the public interest is found in the Davis–Bacon Act, which seeks to protect local wage standards by preventing contractors from competing for government construction contracts based on wages lower than those prevailing in the area of the project. *See Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 773–74 & n. 25, 101 S.Ct.

1451, 1463, & n. 25 (1981). Thus, if the release of names and addresses of employees of government contractors makes it more likely that contractors will abide by the Act's requirements, the release of the information is in the public interest.[1]

Although the redacted wage reports would in some cases enable the Union to detect violations of the Davis–Bacon Act, they provide no means for auditing the representations of the contractor. If the contractor misrepresents his weekly wage information, the only way to determine if the Davis–Bacon Act is being violated is to contact the contractor's employees and to compare their responses to those given by the contractor. We conclude, therefore, that the release of the names and addresses would facilitate the Union's investigation of possible Davis–Bacon Act violations, and thereby would further the public interest.

There is a potentially significant difference, however, between the public interest asserted here and the public interest present in *Dep't of Navy.* In *Dep't of Navy,* this court held that collective bargaining was in the public interest, and the union, as the chosen bargaining representative, was the party specifically designated by Congress to further that public interest. In this case, by contrast, Congress has authorized the contracting federal agency and the Department of Labor to safeguard the public interest embodied in the Davis–Bacon Act by giving them the power to enforce the statute.[2] Although we do not decide the issue, it is likely that the Union has no private cause of action against the employer for Davis–Bacon Act violations. *Cf. Weber v. Heat Control Co.,* 579 F.Supp. 346 (D.N.J.1982), *aff'd,* 728 F.2d

---

1. We recognize that Davis–Bacon has been the subject of extensive criticism and proposals for reform. *See generally* A. Thieblot, *Prevailing Wage Legislation: The Davis–Bacon Act, State "Little Davis–Bacon Acts, the Walsh–Healey Act, and the Service Contract Act* 21–135 (1986). In the determination of the public interest, however, we are bound in this case to follow the dictates of Congress, which thus far has not seen fit to repeal or modify the Davis–Bacon Act.

2. The contracting agencies have "primary responsibility for day-to-day enforcement, such as checking employer payroll records and on-site inspections," while the Department of Labor has coordinating and oversight responsibilities and "conducts its own investigations of alleged violations when it deems such action necessary— *usually because complaints have been received.*" Congressional Research Service, *The Davis–Bacon Act: History, Administration, Pro and Con Arguments, and Congressional Proposals* 20–21 (1978) (emphasis added).

599 (3d Cir.1984) (holding that the employees of government contractors do not have a cause of action for back pay against employers who violate the Davis–Bacon Act). But the mere fact that federal agencies are directly responsible for enforcing the Davis–Bacon Act does not mean that the Union has no role to play in furthering the public interest. If enforcement of the Act is in the public interest, then more effective enforcement of the Act is also in the public interest. The Union has a strong self-interest in effective enforcement of the Act that coincides with the public interest, and there is every reason to believe that the Union will use the information it seeks to monitor compliance, to identify offending contractors, and to bring those contractors to the attention of HUD and the Department of Labor. This substantial supplement to the limited resources that those agencies are able to devote to enforcement can lead only to more effective enforcement of the Act, and thus to the advancement of the public interest.[3]

Moreover, the Union's interest in monitoring HUD's enforcement of the Davis–Bacon Act is exactly the kind of public interest Congress intended FOIA to facilitate. The public in general and organized labor in particular have a strong interest in determining whether HUD is doing the job Congress has directed it to do, and by enabling the Union to investigate possible Davis–Bacon Act violations, the release of the names and addresses would open HUD's actions "to the light of public scrutiny." If the Union finds HUD's enforcement wanting, it may be able to sue for a mandatory injunction to compel the agency to enforce the Davis–Bacon Act. *See Carpet, Linoleum & Resilient Tile Layers,*

*Local Union No. 419 v. Brown,* 656 F.2d 564 (10th Cir.1981), *cited approvingly in Hondros v. United States Civil Serv. Comm'n,* 720 F.2d 278, 298 (3d Cir.1983). In any case, the Union could certainly bring any enforcement lapses to the attention of Congress, the media, or the public, as well as the responsible agencies.

In response to this asserted public interest, HUD relies on *Heights Community Congress v. Veterans Admin.,* 732 F.2d 526 (6th Cir.), *cert. denied,* 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398 (1984), in which the Court of Appeals for the Sixth Circuit held that Exemption 6 prevented disclosure to a community group of the lender names, loan amounts, and property addresses for loans to veterans insured by the Veterans Administration. Heights Community Congress sought this information to determine whether black veterans were receiving equal access to the federal loan guarantees and to investigate the possibility of racial steering by the lenders. In reaching its conclusion, the court held in part that the interest in protecting the rights of black veterans to receive their benefits was not a "public interest" for purposes of Exemption 6, since "assertions of public interest in merely 'monitoring' the operation of a federal program, without more, have not been viewed favorably by the courts." *Id.* at 530. We do not see how this statement can be reconciled with the Supreme Court's statement in *Rose* that the purpose of FOIA is "to open agency action to the light of public scrutiny." We therefore reject the view expressed in *Heights Community Congress* that "mere monitoring" of agency behavior is not a sufficient public interest to be weighed under Exemption 6 against competing privacy interests.[4]

---

**3.** The government has no duty under the Davis–Bacon Act to make regular investigations of the weekly payroll records for possible violations; rather, the statute "leave[s] it to the discretion of the agency to determine whether and when to conduct an investigation of a contractor's compliance with the prevailing wage provisions." *Unity Bank & Trust Co. v. United States,* 756 F.2d 870 (Fed.Cir.1985). This fact provides further support for the proposition that investigations by the Union could serve a useful deter-

rent and enforcement function that would supplement the role played by the federal agencies.

**4.** We do not decide whether *Heights Community Congress* can be supported on its record. The Court of Appeals for the Sixth Circuit emphasized that homeowners "not suspected of any wrongdoing" might find themselves subject to "involuntary personal involvement" in the claim. 732 F.2d at 530. The Court might have felt that identifying individuals to "segregated" housing could have placed them at the center of

HUD offers several arguments that whatever the public interest may be in general, it is diminished in this case. We find no merit in these contentions. First, HUD argues that the Union has not alleged any underpayment or falsification of records. But the Union's very purpose in obtaining the information is to determine whether there has in fact been such underpayment or falsification. The Union need not show that the information it seeks will in fact prove useful. HUD itself has supplied us with evidence that for the six-month period ending October 31, 1987, HUD collected $1.9 million in wage underpayments under the Davis–Bacon Act. *See* Reply Brief at 12. Although this evidence does suggest that HUD is engaging in enforcement activity, it also tends to show that Davis–Bacon Act violations are not rare events, and therefore that the Union's concerns about the need for strong enforcement measures are not irrational.

Second, HUD argues that the Union's private interest in the information is stronger than the public interest. However, the fact that the Union has a proprietary interest in protecting its wages does not diminish the public interest in the use of the names and addresses to enhance Davis–Bacon Act enforcement. *See Dep't of Navy*, 840 F.2d at 1137. In addition, we note that HUD has neither offered an argument nor presented evidence that the Union seeks the information only as a subterfuge to harass nonunion members or to solicit new membership.[5] Absent such a challenge, we must accept the Union's stated purpose in seeking the names and addresses.

Third, HUD asserts that the Union has adequate alternative means available to investigate possible Davis–Bacon Act violations. For example, it suggests that the Union can distribute leaflets or attempt to interview employees on the job site. But a mass mailing to employees' home addresses is likely to be significantly more effective because it can reach workers after the project is completed and out of the presence of the employer. Although sending mailings to an employee's work address might be sufficient in another context, the transient nature of construction work suggests that this alternative is not viable in this case.

On balance, we conclude that in light of the presumption in favor of disclosure, the release of the names and addresses of M & K's employees is not barred by Exemption 6. The public interest in ensuring compliance with the Davis–Bacon Act is strong and the privacy interests in the names and addresses are not particularly compelling absent the possibility of harassment, which HUD has not met its burden of showing. Thus, the invasion of privacy is not clearly unwarranted. We find support for this conclusion in our recent decision in *Dep't of Navy* in which we upheld the release of names and addresses of bargaining unit members to a union for collective bargaining purposes. In addition, we note that in a recent case similar to this one, the D.C. Circuit affirmed the release of names of employees of a government contractor to a union for the purpose of enhancing enforcement of the Davis–Bacon Act. *IBEW, Local 41 v. HUD*, 593 F.Supp. 542 (D.D.C. 1984), *aff'd*, 763 F.2d 435 (D.C.Cir.1985).

### III.

For the foregoing reasons, we will reverse the judgment of the district court with respect to the Social Security numbers and affirm with respect to the names and addresses.

---

a very sensitive public debate on racism, arguing in favor of protection.

**5.** HUD does argue that "employees *might* be subject to intrusive inquiries by the union concerning all aspects of their earnings and their decision to work for a non-union employer." HUD Brief at 12 (emphasis added); *see also id.* at 20 (stating that disclosure might lead to

harassment). But nonunion workers are under no compulsion to divulge any information to union representatives. Accordingly, providing the Union with the names and addresses of M & K's employees does not in our judgment create a situation involving a high risk of greater invasions of privacy.