**Don Victor HARBOLT,**
**Plaintiff-Appellant,**

v.

**DEPARTMENT OF STATE et al.,**
**Defendants-Appellees.**

**No. 79–3413**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

May 5, 1980.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Jose A. Berlanga, Asst. U. S. Atty., Houston, Tex., for defendants-appellees.

Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.

GARZA, Circuit Judge:

Appellant Don Victor Harbolt is incarcerated in a federal penitentiary. While so situated in 1977, Harbolt asked the State Department to provide him with documents showing the following:

(1) The number of U. S. citizens imprisoned in foreign countries for narcotics offenses.

(2) Their names and places of residence in the United States.

The Department sent Harbolt the number of persons held abroad, but denied his request for their names and addresses, on the ground that the information would be an unwarranted invasion of their privacy. Harbolt then brought this suit under the Freedom of Information Act [FOIA], 5 U.S.C. § 552, to compel production of the information denied him. He moved for summary judgment, and the Government cross-moved for the same relief, arguing that the names and addresses were protected from mandatory disclosure under the FOIA by the exemption found at § 552(b)(6) of that act. The District Court agreed, and dismissed the suit. We affirm.

The relevant provisions of § 552 read as follows:

(3) Except with respect to the record made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for record which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

\* \* \* \* \* \*

(b) This section does not apply to matters that are—

\* \* \* \* \* \*

Don Victor Harbolt, pro se.

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

We must determine whether the material denied Harbolt comes within the exception last quoted.

■ The words "similar files" within that exception have been construed to refer to those which "have the same characteristics of confidentiality that ordinarily attach to information in medical or personnel files . . . ." *Robles v. Environmental Protection Agency,* 484 F.2d 843, 845 (4 Cir. 173). The thrust of that definition was adopted by this Court in *Pacific Molasses Co. v. N. L. R. B.,* 577 F.2d 1172, 1180, n. 5 (5 Cir. 1978). The relevant consideration is whether the privacy interests arising from the information sought are similar to those arising from personnel or medical files, and not whether the information is recorded in a manner similar to a personnel or medical record. As the Sixth Circuit recently noted in a case involving, as did *Pacific Molasses,* an employer's request for union authorization cards submitted to the NLRB:

> Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." Union authorization cards cannot be characterized as "personnel or medical files;" however, these cards do fall within the meaning of "similar files." [The words "similar files"] mean that the records in question must, like medical and personnel files, contain information of a personal or confidential nature. *Madeira Nursing Center, Inc. v. NLRB,* 615 F.2d 728 (6 Cir. 1980).

The exception has been applied to a number of diverse documents, several of which could not be labelled "personnel" or "medical" files. *See, e. g., Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (case summaries in Honor and Ethics Code files of the Air Force Academy); *Chamberlain v. Kurtz,* 589 F.2d 827, 841–42 (5 Cir. 1979) (memoranda on disciplinary proceedings involving persons within the Internal Revenue Service); *Wine Hobby USA v. IRS,* 502 F.2d 133, 135 (3 Cir. 1974) (IRS list of persons registered with government as producing wine for family use); *Rural Housing Alliance v. U.S. Department of Agriculture,* 498 F.2d 73, 76–77 (D.C.Cir.1974) (investigatory report on housing discrimination containing information on marital status, legitimacy of children, etc.).

■ It cannot be doubted that the information Harbolt seeks to obtain is of a "personal or confidential nature." The District Court adopted the following findings of a United States Magistrate, which were based upon an uncontroverted affidavit:

> As reflected in the affidavit of John W. DeWitt, Deputy Assistant Secretary for Consular Affairs of the Department of State, the primary purpose for soliciting information from persons arrested abroad is to establish their citizenship, identity and possible entitlement to welfare and protective services from the United States Government. In many instances, according to DeWitt, arrestees refuse to provide such information so as to avoid the possible embarrassment to relatives and friends or may provide the information with the understanding that it may only be released under the provisions of the Privacy Act (5 U.S.C. 552a(b). Thus, it seems clear that the information sought here is of a highly personal nature and not of such nature as to fall within the category of information that is routinely or traditionally disseminated to the public.

Nothing could be more personal than an individual's name and home address, when linked with the stigma of incarceration abroad. It is apparent that this information is not generally known or available, that it could cause great embarrassment to the detainee and his or her family, and that it is frequently withheld by the detainee from the government to avoid the consequences of disclosure.

Harbolt has cited us to the legion of cases holding that there is no constitutional protection against publication of the fact of an

individual's arrest or conviction, arguing that these cases establish that there is no valid privacy interest in such information. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Cox Broadcasting v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *Time Incorporated v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). The cases, however, deal with persons arrested or convicted *in this country.* We are unwilling to extend the rationale on a blanket basis to information concerning *foreign detention,* in terms of the FOIA.[1] We cannot be certain that those held have been charged, tried, convicted, or simply held, with the concomitant stigma attaching. Because of these uncertainties, the cases cited are inapposite.

■ Having determined that we deal with information falling within the "similar files" language due to the privacy interests involved, we must balance the public's interest in disclosure against the detainee's right to privacy in order to determine whether disclosure would mean "a clearly unwarranted invasion of personal privacy." *Department of Air Force v. Rose,* 425 U.S. 352, 372–73, 96 S.Ct. 1592, 1605, 48 L.Ed.2d 11 (1976); *Getman v. N. L. R. B.,* 450 F.2d 670 (D.C.Cir.1971). The District Court found that any public interest in disclosure would be outweighed by the unwarranted invasion of privacy which would result if the government were required to make disclosure.

It is difficult to identify any manner in which the disclosure of a detainee's name and home address would be in the public interest. Harbolt has only argued that the State Department provides inadequate assistance to Americans imprisoned abroad, and asserted that he himself could provide "services."[2] We note that a *requestor's* motive or interest in obtaining information has been held irrelevant. *Robles v. Environmental Protection Agency,* 484 F.2d at 847. Harbolt's plan to aid those detained is, however, the only public benefit of disclosure suggested to us. We can attach very little weight in terms of the balancing test described to any work a federal prisoner might accomplish for the detainees. No other, more general public interest having been suggested, we decline to speculate as to what benefits might accrue to the public at large from disclosure.

Against the negligible public interest in disclosure, we must weigh the detainee's privacy interests. Obviously, disclosure that one is being held abroad on narcotics charges could cause great embarrassment to the detainee, and his or her family and associates. The impact of such a revelation could be devastating and it could be of lifelong impact. Further, as the uncontroverted affidavit details, the State Department, American Embassies, and the Consular Service are actively engaged in identifying and attempting to assist detainees in ways which those agencies deem to be prudent and responsible. The conduct of international relations is entrusted to the executive by the Constitution, and courts have been traditionally unwilling to intervene in those functions. Where services are provided to those held abroad in a manner felt to be appropriate by the executive branch, we see no furtherance of the public interest by a single prisoner's intention to intervene.

---

1. It should be noted that we are not deciding whether or not these detainees in foreign countries have a *constitutional* protection against having information about their status disclosed. The issue is whether or not the state department is required under the FOIA to disclose this information.

2. Harbolt detailed his plan in a response to the magistrate's findings:

It is the intent of your Plaintiff to provide whatever services he can to those incarcerated abroad. Frequently, these persons are not able to obtain assistance which their fellow prisoners in the United States routinely are provided with. While your Plaintiff is incarcerated, he has a vast library of reference and research materials to draw from, including most anything from the *Congressional Directory,* to the *Physician's Desk Reference.* Publications such as the *Prisoner's Yellow Pages* are frequently very helpful to a prisoner, regardless of where they are incarcerated. Your Petitioner has franked mailing privileges and through this Court's sentencing discretion, more time than he knows what to do with. Thus, the disclosure of the requested information would be to the benefit of those parties concerned.

■ Thus, we cannot avoid the conclusion that the detainee's privacy would be breached by an unwarranted invasion if the additional information Harbolt seeks were disclosed by compulsion of the courts under the FOIA. By providing figures on the number of Americans imprisoned abroad, the State Department acted in good faith, and in full compliance with the command of § 552(b) that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." It is obviously in the public interest for Americans to know that others are held abroad on drug charges, and the numbers involved. It is equally obvious that no unwarranted intrusion upon a detainee's privacy will occur where he is only a nameless statistic. Where his name, and hence reputation, and his home address, and hence family and associational ties, are revealed, however, the situation is vastly different. The State Department acted within the relevant provisions of the FOIA, and the judgment of the District Court must be

AFFIRMED.