The MIAMI HERALD PUBLISHING CO., et al., Plaintiffs-Appellees,

v.

UNITED STATES SMALL BUSINESS ADMINISTRATION, et al., Defendants-Appellants.

No. 80–5192.

United States Court of Appeals, Fifth Circuit.*
Unit B

March 19, 1982.

---

**12.** *See* note 3 *supra*.

* Former Fifth Circuit Case, Section 9(1) of Public Law 96–452—October 14, 1980.

Barbara L. Herwig, Atty., U. S. Dept. of Justice, Civ. Div., John Hoyle, Atty., Appellate Staff, Pamela G. Steele, Small Bus. Admin., Washington, D. C., for defendants-appellants.

Parker D. Thomson, Richard J. Ovelmen, Miami, Fla., for plaintiffs-appellees.

Before DYER, TJOFLAT and FAY, Circuit Judges.

TJOFLAT, Circuit Judge:

In this Freedom of Information Act case, the district court permanently enjoined the Small Business Administration, its administrator, and its Coral Gables, Florida, district director from withholding certain information from the Miami Herald Publishing Company and its reporter, Andrew Rosenblatt. The district court correctly concluded that the statutory exemptions from mandatory disclosure relied upon by the Small Business Administration and its officers are inapplicable to this information, and we therefore affirm its decree.

## I.

The Small Business Administration (SBA) programs involved in the Freedom of Information Act (FOIA) requests at issue are: (1) the 8(a) program, (2) direct loans, and (3) guaranteed loans. Under the 8(a) program,[1] the SBA enters into prime contracts with federal departments and agencies for the supply of services or materials, and then subcontracts the work to qualifying socially and economically disadvantaged small business concerns. 15 U.S.C. § 637(a) (Supp. 1980). To facilitate the performance of the subcontracts, the SBA sometimes makes advance payments to the small business concerns, pursuant to 41 U.S.C. § 255 (1976). The advances are to be repaid in a specific and orderly manner from the contract proceeds as agreed by the SBA and the subcontractor. Therefore, complete repayment is contingent upon completion of the subcontract.

"Direct loans" are made directly by the SBA to small business concerns. "Guaranteed loans" are made by banks and other financial institutions to small businesses and guaranteed by the SBA. The lender services the loan, handles the record keeping, and receives payments directly from the borrower. Normally, the only information the SBA receives about the status of a guaranteed loan is a quarterly report from the lender. If the borrower fails to repay a guaranteed loan, however, the SBA in effect purchases the loan from the lender for up to 90% of the loan amount and undertakes to collect from the borrower. *See generally*, 15 U.S.C. § 633 (Supp.1980).

In 1978, Andrew Rosenblatt, a reporter for the Miami Herald,[2] tendered to the SBA two requests pursuant to the FOIA. On November 15, 1978, Mr. Rosenblatt requested:

A list of all 8(a) firms that have received advances [sic] payments from the SBA. The list should include the amount of the advance, the date it was made and what, if any, balance remains.

(the first request).

On December 8, 1978, Mr. Rosenblatt requested:

A list of those SBA loans, made through the SBA Miami district office, that have either been written off, liquidated, or declared delinquent since Jan. 1, 1970.

(the second request).[3]

To the first request the SBA responded that it would release "the list of all 8(a) firms that have received advance payments from SBA, the amounts of those advances, and the dates the advance payments were made," but would not "disclose the liquidation schedule or the balance of advance payments due for any individual firm." The SBA denied the second request.

Following an unsuccessful administrative appeal, the Herald brought this action for declaratory and injunctive relief against the SBA, its administrator, and its Coral Gables, Florida, district director.[4] At trial, the SBA opposed the disclosure of information that would personally identify the borrower or reference the status of loans or outstand-

---

1. The popular name of this program derives from its source in Section 8(a) of the Small Business Act, as amended, 15 U.S.C. § 637(a) (Supp.1980).

2. The Miami Herald is a newspaper of general circulation published by the Miami Herald Publishing Company. We refer to the Miami Herald Publishing Company and Rosenblatt collectively as the Herald.

3. The "SBA Miami district office" is in fact in Coral Gables, and the SBA so understood the request.

   The terminology used in the second request is not the terminology used by the SBA. The SBA refers to loans as 30 days past due, 60 days delinquent, in liquidation, charged off

closed, charged off final, and charged off subject to review. At trial, the Herald's attorney indicated that the second request was intended to cover all these categories except 30 days past due. The SBA does not dispute this characterization of the request. As did the district court, we therefore treat the second request as pertaining to all SBA loans made through the Coral Gables district office which, after January 1, 1970, were 60 days delinquent, in liquidation, charged off closed, charged off final, or charged off subject to review.

4. All subsequent references to the SBA as a party to this lawsuit comprise the SBA administrator and Coral Gables district director.

ing 8(a) advances, and invoked the two exemptions to the disclosure requirements of the FOIA which are the subject of this appeal: [5]

> This section [requiring disclosure] does not apply to matters that are—
>
> \*　\*　\*　\*　\*　\*
>
> (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;
>
> \*　\*　\*　·　\*　\*　\*
>
> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

5 U.S.C. § 552(b)(4) and (6) (1976) (exemption 4 and exemption 6).

The district court entered a final decree permanently enjoining the SBA from withholding from the Herald: (1) the names of all firms which received advances from the SBA under its 8(a) program and the remaining balances on such advances; and (2) records, a list if available, setting forth all SBA loans made through the Coral Gables District Office of the SBA that have been classified as "delinquent," "in liquidation," or a "charge-off" since January 1, 1970, and original dollar amounts and amounts outstanding on loans in such categories. The court incorporated into its decree its previous orally announced findings of fact and conclusions of law holding the claimed exemptions inapplicable.

The SBA concedes that the claimed exemptions do not protect from mandatory disclosure the following sub-classes of the records sought: (1) Neither exemption applies to any loan or 8(a) advance that is the subject of any public legal proceeding, such as foreclosure or bankruptcy; (2) Exemption 4 does not apply to information pertaining to the 8(a) program; (3) Exemption

4 does not apply to direct loans, but only to guaranteed loans; (4) Exemption 4 does not apply to information relating to guaranteed loans which the SBA has purchased from the lender; (5) Exemption 6 does not apply to files containing information concerning corporate entities, but only to files containing information concerning persons.[6]

In light of these concessions, the SBA's position on this appeal is that: (1) Exemption 4 protects from mandatory disclosure guaranteed loans which are not the subject of public legal proceedings and which have not been purchased by the SBA; (2) Exemption 6 protects from mandatory disclosure both 8(a) advances and loans (direct or guaranteed) made to persons and not the subject of any public legal proceeding.

## II.

In a FOIA action, the burden is on the agency to sustain its withholding of information. 5 U.S.C. § 552(a)(4)(B) (1976). In order for information to be within exemption 4, it must be either a trade secret or (1) commercial or financial information, (2) obtained from a person, and (3) privileged or confidential. *Continental Oil Co. v. Federal Power Comm'n*, 519 F.2d 31, 35 (5th Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 794 (1976); *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 766 (D.C.Cir.1974). Commercial or financial information is confidential for purposes of the exemption if its disclosure will likely (a) impair the government's ability to obtain necessary information in the future or, (b) cause substantial harm to the competitive position of the person from whom the information was obtained. *Continental Oil*, 519 F.2d at 35; *Morton*, 498 F.2d at 770.

In order to show a likelihood of substantial competitive harm, the agency must

---

**5.** In addition to the two exemptions set out in the text, the SBA relied on exemption· 5 of the FOIA, 5 U.S.C. § 552(b)(5) (1976). The SBA does not appeal the district court's holding that exemption 5 was inapplicable to this case.

**6.** The Herald asserts that the SBA conceded at trial that records of loans that have been

charged off or written off are not exempt from disclosure. As we read the trial transcript, the SBA's concession may have been less than a conclusive admission. We therefore proceed on the assumption that the asserted concession was not made.

show (i) that the entity that will suffer harm is in actual competition, and (ii) that substantial competitive injury will result from disclosure. *Gulf & Western Industries, Inc., v. United States*, 615 F.2d 527, 530 (D.C.Cir.1979); *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 679 (D.C.Cir.1976). "No actual adverse effect on competition need be shown.... The court need only exercise its judgment in light of the nature of the material sought and the competitive circumstances in which the [person from whom the information was obtained] does business, *relying at least in part on relevant and credible opinion testimony.*" *Kleppe*, 547 F.2d at 683 (emphasis added).

■ The SBA does not claim that the records of guaranteed loans as to which it invokes exemption 4 are a trade secret or privileged, or that their disclosure is likely to impair the government's ability to obtain necessary information in the future. For exemption 4 to protect these records from mandatory disclosure, therefore, they must be commercial or financial information, obtained from a person, and confidential because of the likelihood that their disclosure will cause substantial harm to the actual competitive position of the person from whom they were obtained.

The sole evidence the SBA presented at trial to show that disclosure of records relating to guaranteed loans would harm the competitive position of the borrowers [7] was the testimony of the SBA Coral Gables district director which is set out in the margin.[8] The district court found that this evidence did not satisfy the SBA's burden to show a likelihood of substantial competitive injury.[9] This finding of fact is not clearly erroneous, and we therefore accept it. Fed.R.Civ.P. 52(a).

The testimony of the Coral Gables district director, who was not qualified as an expert witness, was mere unsupported speculation about the business world generally, with no focus on small business debtors or guaranteed loans in particular. The district court was free to assign little probative weight to this opinion testimony. Furthermore, the SBA offered no evidence whatever that the borrowers whom it claims will be injured by disclosure of the records of their guaranteed loans are in actual competition with anyone. Even according to the relatively lax evidentiary standard of *Kleppe, supra,* the district court did not err in finding that

---

7. The SBA does not contend that disclosure would affect the lenders, from whom information relating to guaranteed loans is directly obtained.

8. "Well, this information can operate to the detriment of the small businessman in various ways.

"The competition of course could take advantage of the poor creditworthiness (sic) or economic condition of the company.

"The vendors, those suppliers who provide the goods and services to the small businessman, if they found out that the individual missed a payment or was considered delinquent, would probably be reluctant either to deal with him or might change the nature of the terms with which they deal with the individual.

"If employees found out that the company was having some temporary or long-term problems in paying their debts, employees might be concerned about their positions and make look (sic) to take their positions elsewhere."

9. The district court stated: "Now the evidence in this case, to begin with, ... is just very general evidence.

It says however number of names might be provided, to tell them, tell the public, or to tell [the Herald], that these folks owe money somehow would be violating a privilege or a confidence or an invasion of privacy. Why?

Because it naturally follows that in a commercial setting, if somebody owes money, it has some affect (sic) on their position.

That is generally the detrimental effect upon their position in a competitive society.

That just makes up the evidence basically in the case.

So in the D. C. case ... there was a discussion about the necessity of putting on proof, not just general conclusionary statements."

Although this oral discussion was informal, the court clearly found the evidence of likely competitive injury general and conclusory and inadequate to carry the SBA's burden. Furthermore, implicit in the court's holding that exemption 4 was inapplicable was the finding that there was not a likelihood of substantial harm to the competitive position of the SBA borrowers.

disclosure of the guaranteed loan records would not likely cause substantial harm to the competitive position of SBA borrowers. The legal conclusion that the records are not confidential for purposes of exemption 4 follows necessarily from this fact. We therefore need not address the alternative arguments advanced in support of the Herald's position, and affirm the district court's holding that exemption 4 is inapplicable to the information sought in this case.

## III.

■ In order for information to be within exemption 6, (1) the information must be personnel, medical, or similar files and (2) a balancing of individual privacy interests against the public interest in disclosure must reveal that disclosure of the information would constitute a clearly unwarranted invasion of personal privacy. *See, e.g., Harbolt v. Dep't of State*, 616 F.2d 772, 774–75 (5th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980); *Pacific Molasses Co. v. Nat'l Labor Relations Bd.*, 577 F.2d 1172, 1178–81 (5th Cir. 1978). Since the records sought by the Herald are not medical or personnel files, our initial inquiry is whether the records are "similar files" within the meaning of exemption 6.

■ The words "similar files" in the exemption have been construed to refer to information which has the same confidential character as information in medical or personnel files. *See Harbolt*, 616 F.2d at 774; *Pacific Molasses*, 577 F.2d at 1180, n.5. The relevant consideration is whether the privacy interests in the information sought are similar to privacy interests in personnel and medical files, and not whether the information is recorded in a manner similar to personnel or medical files. *Harbolt*, 616 F.2d at 774. Diverse documents have been held to be "similar files" within the exemption. *See, e.g., Dep't of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (case summaries in Honor and Ethics Code files of Air Force Academy); *Harbolt, supra* (names and addresses of United States

citizens imprisoned in foreign countries for narcotics offenses); *Chamberlain v. Kurtz*, 589 F.2d 827, 841–42 (5th Cir. 1979) (memoranda on disciplinary proceedings involving persons within Internal Revenue Service); *Pacific Molasses, supra* (individual union authorization cards); *Wine Hobby U. S. A., Inc., v. I. R. S.*, 502 F.2d 133 (3d Cir. 1974) (I. R. S. list of persons registered with government as producing wine for family use); *Rural Housing Alliance v. U. S. Dep't of Agriculture*, 498 F.2d 73, 76–77 (D.C.Cir. 1974) (investigatory report on housing discrimination containing information on marital status, legitimacy of children, etc.). In each case, the court has focused on the personal nature of the information sought.[10]

■ The records as to which the SBA invokes exemption 6 are (1) the names of all non-corporate firms that have received 8(a) advances which are not the subject of a public legal proceeding, and the remaining balances on such advances, and (2) records, including original amounts and outstanding balances, of all loans to non-corporate borrowers made through the SBA Coral Gables district office and classified as "delinquent," "in liquidation," or a "charge off" since January 1, 1970, but not the subject of a public legal proceeding. Significantly, the information sought does not include information supplied in the process of applying for loans and 8(a) advances. Thus, the disclosure of such matters as the general financial condition or the personal background of the applicant is not at issue.

We have no difficulty concluding that the information ordered disclosed by the district court is not "similar files" within exemption 6. No privacy interest or confidential character attaches to the records of loans classified as "delinquent," "in liquidation," or a "charge off," because the delinquent or defaulting borrower's only realistic expectation is that the lender, whether the SBA on a direct loan or a financial institution on a guaranteed loan, will proceed against him with the full force of the law. So proceed-

---

**10.** For a more exhaustive discussion of "similar files," see *Pacific Molasses Co. v. Nat'l Labor Relations Bd.*, 577 F.2d 1172, 1178–81 (5th Cir. 1978).

ing, the lender will publicly disclose precisely that data which the SBA here seeks to withhold. SBA borrowers are given no assurance of confidentiality in the event of default, and information concerning defaults on SBA loans is routinely revealed to other lenders and credit unions.

The SBA asserts that when a borrower falls behind in his loan payments, the lender and borrower sometimes work out an arrangement to liquidate the loan without resort to public legal proceedings. In such cases, argues the SBA, the loan and the delinquency are not publicly disclosed and therefore remain private and confidential for purposes of exemption 6. At oral argument, however, the SBA conceded that the expectation of such an accommodation is a mere hope on the part of the borrower, with no foundation in statute or in SBA loan documents. Thus, the SBA would subject the disclosure requirements of the FOIA to adjustment according to the whim of SBA loan officers. Congress cannot have intended the personal or confidential nature of information within exemption 6 to be determined by the whim of officers of the agency invoking the exemption. Therefore, since a delinquent SBA borrower's only legitimate expectation is that his loan and the outstanding balance will be publicly disclosed, the records of his loan are not "similar files" within the meaning of exemption 6.[11]

The other information as to which the SBA invokes exemption 6 is the names of firms that have received advances under the 8(a) program and the remaining balances on such advances. These records are of two sorts: those pertaining to 8(a) advances whose recipients are delinquent in their repayments, and those pertaining to 8(a) advances which have been liquidated or are being repaid in due course. Advances whose recipients are delinquent are in all

functional and practical respects equivalent to loans whose recipients are delinquent, and our discussion of delinquent loans applies equally to them.

Our discussion of delinquent loans does not apply to records of 8(a) advances which have been liquidated or are being repaid in due course, since such records are not subject to disclosure in public legal proceedings to enforce the debt. However, the SBA stands ready to provide the Herald with a list of firms that have received 8(a) advances, the amounts of the advances, and the dates the advances were made. See p. 612, *supra*. In the case of 8(a) advances whose recipients have liquidated or are repaying the advances, the only additional disclosure required by the district court's decree is the fact that the advance has been liquidated or is being timely repaid. Whatever privacy interest or confidential character might attach to the fact that a business has received an 8(a) advance in a specified amount, no such privacy interest or confidential character attaches to the additional fact that the business has met its financial obligations.

We hold, then, that none of the information ordered disclosed by the district court is "similar files" within the meaning of exemption 6. So holding, we need not balance the privacy interests of the SBA borrowers and 8(a) advance recipients against the public interest in disclosure. We affirm the district court's holding that exemption 6 is inapplicable to the information sought in this case.

The final decree of the district court is AFFIRMED.

---

11. The SBA's reliance on *Gregory v. Federal Deposit Ins. Corp.*, 470 F.Supp. 1329 (D.D.C. 1979), *rev'd on other grounds*, 631 F.2d 896 (D.C.Cir.1980), is misplaced. *Gregory* involved financial records, including loan amounts, assets of the borrower, and collateral, in the hands of the Federal Deposit Insurance Corpo-

ration as the insurer of two closed banks. There is no indication in the case that the records sought would be publicly disclosed other than by the FOIA requester.

We of course do not hold broadly that financial records can never be "similar files" within exemption 6.