### The BUFFALO EVENING NEWS, INC., Plaintiff,

### v.

### SMALL BUSINESS ADMINISTRATION, Defendant.

### No. CIV–86–842C.

United States District Court, W.D. New York.

Aug. 3, 1987.

---

Jaeckle, Fleischmann & Mugel (Andrea R. Polvino, of counsel), Buffalo, N.Y., for plaintiff.

U.S. Dept. of Justice, Federal Program Branch, Civ.Div. (Susan Korytkowski, of counsel), Washington, D.C., for defendant.

CURTIN, Chief Judge.

Both plaintiff and defendant now move for summary judgment in the instant case. *See especially* Items 7, 11, 14, 18, 19, and 20. This action arises out of the refusal of the defendant, Small Business Administration [SBA], to disclose certain information requested by reporters employed by the plaintiff, Buffalo Evening News, Inc. [the News].

The relevant facts of this case, which are essentially undisputed, can be summarized as follows. In or about February of 1986, the News made a request to the SBA for the names of borrowers, their addresses, and the present disposition of loans made by the SBA following the so-called Ash

Wednesday ice storm of 1976 and the Blizzard of 1977, after the News became aware of information suggesting that certain of these loans had not been repaid (Item 1, Exh. A). As a result of this request, Branch Counsel for the SBA in Buffalo, New York, disclosed only the names, city, and state of these borrowers (*id.*, Exh. B). Access to all other requested information was denied.

After reviewing the list of approximately 1,800 borrowers released by the SBA, the News made a second request pursuant to the Freedom of Information Act [FOIA], 5 U.S.C. § 552 (*id.*, Exh. C), again seeking access to information regarding the amount of the loans extended to the 1,800 borrowers, the total dollar amount repaid to date and the current disposition of each loan extended.

In response to this request, the SBA released information regarding the total dollar amount lent as a result of the two events, the total dollar amount repaid to date, and a general statement regarding SBA policy in addressing delinquent borrowers (*id.*, Exh. D). As of the date of the response, only $5,400,000.00 of the total $10,104,100.00 loaned had been repaid to the SBA.

The News appealed the refusal to disclose the remaining information to the SBA Freedom of Information/Private Acts Appellate Office. On appeal, the Director of the Appellate Office declined to follow the case of *Miami Herald Publishing Co. v. Small Business Administration*, 670 F.2d 610 (5th Cir.1982), and denied disclosure on the basis of Exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4) (Item 1, Exh. F). In a subsequent letter, the Director repeated the denial of the appeal, this time on the basis of Exemptions 4 and 6 of the FOIA, 5 U.S.C. § 552(b)(4) and (6) (Item G). Thereafter, this action was commenced.

## I. *Exemption 4*

Plaintiff now makes several arguments. First, the News says that the SBA's denial of access pursuant to Exemption 4 of the FOIA is improper in this case because this statutory exemption covers only "trade secrets and commercial or financial information obtained from a person and privileged or confidential" which, it argues, are not involved here. Moreover, the News contends that the burden of proof is upon the party seeking to invoke an exemption from the FOIA by a preponderance of the evidence.

Plaintiff News concedes for present purposes that the information sought is "financial" information within the meaning of Exemption 4. However, it says that the SBA is wholly unable to establish the remaining two criteria: that the information was obtained from a "person" or that it is "privileged or confidential." Plaintiff's arguments about these matters, and defendant's responses to them, will be examined separately below.

### A. *"Obtained from a Person"*

Plaintiff says that because the exemption provisions are to be read narrowly, *United States Department of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), the phrase "obtained from a person" should not be given a meaning other than the plain meaning evident from the face of the words. *Board of Trade of the City of Chicago v. Commodity Futures Trading Commission*, 627 F.2d 392 (D.C. Cir.1980) (stating the general rule that information generated by government sources does not come within the ambit of Exemption 4). *But see Gulf & Western Industries v. United States*, 615 F.2d 527 (D.C.Cir.1979).

In light of the above, plaintiff now asserts that the information it seeks from the SBA has been generated by the SBA regarding the individual loan amounts, including the outstanding balances and payment, collection, or discharge status. Plaintiff says that "[i]n no way do these record implicate any financial information provided to the government by the borrower." *Miami Herald Publishing Co. v. Small Business Administration, supra.* It says that the only connection between the information sought here and the information obtained from the borrower is that "a loan was granted by the SBA

presumably on the basis of the financial records submitted by the borrower" and that "[n]othing more or less is established by the release of the requested records, much less the contents of the records submitted by the borrowers." Item 7, pp. 6–7.

Defendant SBA opposes. Relying on the case of *Gulf & Western Industries, Inc. v. United States*, 615 F.2d 527, 529–30 (D.C. Cir.1979), defendant asserts that the borrowers all come within the meaning of "persons" as defined by 5 U.S.C. § 551(2) and are therefore protected by Exemption 4 of the FOIA. Further, defendant argues that contrary to plaintiff's view, the SBA:

> obtains information concerning the status of a disaster loan from the small business in itself, *i.e.*, the action or inaction of the business in paying its SBA loan obligation determines the loan's status. SBA merely complies and records the data supplied by the business through its loan payment activity.

Item 11, p. 10. As such, defendant alleges that it cannot properly be said that the information sought by plaintiff has actually been generated by the government so that it is outside the parameters of Exemption 4 of the FOIA. Given all of the above, defendant says that it is clear that the loan information sought by plaintiff is "obtained from a person" as satisfies the second requirement of Exemption 4. Moreover, defendant SBA asserts that the *Board of Trade* case cited by plaintiff is inapposite to the present case. It argues that the restriction articulated in that case is "intended solely to prevent the application of Exemption 4 to records transferred between agencies," which is clearly not at issue here. Item 18, pp. 3–4.

In its most recent submissions, plaintiff takes issue with the logic of defendant's analysis. Plaintiff argues that it is "bootstrapping" for defendant SBA to argue that the information sought was "obtained from a person" outside of the government. It notes:

> The SBA ... argues that a borrower need do nothing, i.e., neither pay the loan nor cooperate in collection efforts, and

that such inaction is the equivalent of affirmatively providing information to the government.

Item 20, p. 2. Thus, it argues that it cannot be said that the SBA's information, including that concerning debt forgiveness or discharge, can be said to have been "obtained" from an extra-governmental source.

Given the above, I believe that the *Gulf & Western* case cited by defendant is inapposite in the instant case. In *Gulf & Western*, plaintiff sought disclosure of information regarding another company, Norris Industries, Inc., from the Armed Service Board of Contract Appeals [ASBCA]. This information included very sensitive information, including Norris's "profit rate, actual loss data, general and administrative expense rates, projected scrap rates and learning curve data." *Gulf & Western Industries, Inc., supra*, at 529. After reviewing this information, the ASBCA deleted various portions of the report which contained information supplied by Norris or from which information supplied by Norris could be extrapolated. Because of the nature of this material and the fact that this information was obtained from a person outside the government, the district court and the Court of Appeals for the District of Columbia approved.

■ I find no analogous situation in the case at bar. Instead, I find that all of the information sought by plaintiff here has been generated by the defendant SBA in the course of its involvement with its borrowers. I also find, as plaintiff argues, that this information in no way implicates any of the financial information provided by the borrowers to the government. Because I find that information sought is not the type that can be said to be "obtained from a person" within the meaning of Exemption 4, I find that disclosure is required in accordance with the FOIA on this ground. *Board of Trade of the City of Chicago v. Commodity Futures Trading Commission, supra*.

### B. "Privileged or Confidential"

Plaintiff also argues that defendant SBA cannot satisfy the Exemption 4 require-

ment that the documents sought by plaintiff are "privileged or confidential." The News says that there is no lender-borrower privilege created by the Constitution, statute, or common law. *Sharyland Water Supply Corporation v. Block,* 755 F.2d 397 (5th Cir.1985), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 697 (1985). It also says that the SBA cannot satisfy the two-pronged test for determining confidentiality under Exemption 4 as articulated by *National Parks and Conservation Association v. Morton,* 498 F.2d 765 (D.C.Cir. 1974). This case stated that:

commercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

*Id.* at 770 (footnote omitted).

Plaintiff says that defendant cannot meet either of these two requirements. First, the News says that disclosure of the status of the SBA loan will not cause qualified borrowers to decline the benefits associated with obtaining an SBA loan. Instead, it says that it is more likely that borrowers will see such disclosure as a "cost of doing business" with the government. *Racal-Milgro Government Systems, Inc. v. Small Business Administration,* 559 F.Supp. 4 (D.C.D.C.1981).

Second, plaintiff says that the SBA cannot establish the likelihood of substantial competitive injury in this case, *Miami Herald Publishing Co. v. Small Business Administration, supra* at 614, and that generalizations regarding potential impact are inadequate for this purpose. *Id.* at 614 n. 5. *Cf.,* Item 14. Moreover, plaintiff notes that the SBA does not maintain a promise of confidentiality with respect to defaulting or delinquent borrowers. *Miami Herald Publishing Co. v. Small Business Administration, supra* at 615–65; Item 1, Exh. D.

In response, the SBA says that the documents involved here are "confidential"

within the meaning of the two-pronged test set out in the *Morton* case, *supra,* as well as the meaning of the Congressional intent behind Exemption 4. The SBA says that here the injury is twofold because disclosure of the information requested by plaintiff would not only cause substantial competitive harm to the small businesses involved, but would also impair the SBA's interest in the effective operation of its loan assistance program.

Defendant says that it is unnecessary for it to show actual competitive harm in order to satisfy the second test of confidentiality but only a likelihood of harm to its ability to compete. *Gulf & Western Industries, Inc. v. United States, supra.* It argues that the court must make its evaluation on a case-by-case basis. *National Parks v. Kleppe,* 547 F.2d 673, 683 (D.C.Cir.1976).

Defendant says that, like the *Kleppe* case, there is a strong likelihood of competitive harm to many borrowers if disclosure is ordered by this court. *See* Declaration of Nicholas Kalcounos [Kalcounos Declaration], Item 11, Exh. 2; *see also* Item 14. Defendant says that, taken out of context of the business's total financial picture, the loan status information may create an impression with the general public of the business's financial instability.

The SBA notes that, in addition to private interests of confidentiality, government interests are also cognizable under Exemption 4. *National Parks & Conservation Ass'n v. Morton, supra; Comstock International (U.S.A.), Inc. v. Export-Import Bank of the United States,* 464 F.Supp. 804 (D.C.D.C.1979).

It argues that, like defendant Export-Import Bank in the *Comstock* case, disclosure here might hamper the SBA's ability to carry out its purpose. Finally, defendant notes that in certain "special situations" set out in SBA's Standard Operating Procedures and not applicable here, the agency does provide limited conditioned disclosures of information to certain parties concerning the status of disaster business loans. *See id.,* Exh. 2, Attachment A. Defendant says that, in addition to the requirement of confidentiality, disclosures under these proce-

dures require the borrower's express consent. *Id.* at ¶¶ 16, 17. Defendant SBA argues that the limited extent to which SBA discloses loan status information evidences the inherent confidential nature of this information.

Given all of the above, the SBA says that disclosure of loan status information is not, as the News contends, a "cost of doing business with the government." Unlike the information sought in the *Racal-Milgo* case, loan status information is clearly the type of financial information Congress sought to protect under Exemption 4. It is not, the SBA asserts, widely available for inspection. *See* Item 18.

In its final submission, plaintiff argues that the present case is not analogous to the situation in the case of *Comstock International (U.S.A.), Inc. v. Export-Import Bank of United States supra,* as defendant insists. Plaintiff says that while *Comstock* involved a bank which was "one of many highly competitive government-supported credit unions, whose ability to effectively compete would be irreparably impaired if the loan status records were disclosed," no such scenario is involved here. Item 20, pp. 3–4. Instead, the News states:

> [t]he SBA ... exists for the very benefit of the small businessman. There is virtually no equivalent alternative source for the type of low cost debt financing one is able to obtain from the SBA. The fear that small businesses will reject the low interest loans sponsored by the SBA on a wholesale basis is of questionable legitimacy on its face and is wholly unsupported by any evidence submitted by the SBA.

*Id.* at p. 4. Plaintiff says the declarations submitted by SBA are wholly inadequate for this purpose. Instead, it notes that all of these declarations are without factual support.

■ I find plaintiff's arguments persuasive here. As the News argues in its papers, I do not believe that disclosure in this case will harm the SBA's ability to conduct its own business as intended by Congress. *Racal-Milgro Government Systems, Inc. v. Small Business Administration, supra.* I also find that the SBA fails to establish the likelihood of competitive injury to its borrowers as is required by the *Morton* case. Instead, I find that the sworn declarations provided to this court in connection with this case to be inadequate for these purposes.

Accordingly, I find that the withheld documents are not "privileged or confidential" within the meaning of Exemption 4 to the FOIA. Plaintiff's motion for summary judgment is therefore granted on this ground.

## II. Exemption 6

In addition to the grounds stated above, plaintiff argues that the SBA cannot avoid disclosure of its loan status records here pursuant to Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6). This exemption covers only: "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy ...." Plaintiff concedes that records requested here constitute "similar files" within the meaning of Exemption 6 with respect to individual borrowers. However, it argues that this court must still determine whether or not the disclosure of these files is a "clearly unwarranted invasion of personal privacy," after considering 1) the plaintiff's interest in disclosure, 2) the public's interest in disclosure, 3) the degree of invasion of personal privacy, and 4) the availability of any alternative means of obtaining the requested information. *Church of Scientology v. U.S. Dept. of Army,* 611 F.2d 738, 746 (9th Cir.1979). Plaintiff says that because the SBA has already disclosed the names and addresses of the borrowers, it has already disclosed the most personal, potentially embarrassing part of the records requested. Moreover, it asserts that Exemption 6 is only potentially applicable to individual borrowers and not corporations or other business associations. *Cf., Ivanhoe Citrus Association v. Handley,* 612 F.Supp. 1560 (D.C.D.C.1985). Given the above, plaintiff says that the SBA cannot show that the

disclosure requested in this case is "clearly unwarranted."

### A. Balancing of Interests

█ Plaintiff now argues that, after consideration of all of the relevant factors, this court should find that disclosure should be ordered pursuant to the FOIA. First, the News says that both the plaintiff and public interest involved are "virtually synonymous" in this case and dictate that the "potentially questionable financial dealings of prominent Buffalo and Western New York businessman and businesses" be ordered where "those dealings implicate irresponsible spending of public monies." Item 7, p. 16. *Washington Post Co. v. U.S. Dept. of Health and Human Services,* 690 F.2d 252 (D.C.Cir.1982).

Further, plaintiff contends that there is no "clearly unwarranted" invasion of privacy here. Citing the *Miami Herald* case as authority, plaintiff argues that the records of loans classified as "delinquent" cannot reasonably be considered exempt from discovery. Finally, plaintiff says that the availability of the information from other sources strengthens its case.

In response, defendant SBA argues that the privacy interests threatened by disclosure is substantial here. It says that for borrowers with disaster loans on their personal residences, disclosure involves their privacy interest in matters relating to their home ownership. *Heights Community Congress v. Veterans Administration,* 732 F.2d 526 (6th Cir.1984). Similarly, defendant says that for both homeowners and sole proprietors with small business, disclosure also affects matters related to personal finances. *Aronson v. HUD,* No. 86–0333–S (D.Mass. October 3, 1986) (Item 11, Exh. 5). Defendant says that information sought by plaintiff in this case should be protected to a greater extent than that in *Aronson, supra,* especially because plaintiff seeks to publish this information in a newspaper.

Defendant states that information on SBA disaster home loans, whether paid in full, current, or in default, is only revealed either with the borrower's consent or pursuant to a specific condition of disclosure under the Privacy Act, 5 U.S.C. § 552a(b); Item 11, Exh. 6, "Privacy Act Issuances;" *id.,* Exh. 7, "Privacy Act Systems."

Defendant says that the disclosure sought by plaintiff here would render these privacy provisions meaningless because it would provide plaintiff with unfavorable information on a borrower in default before this borrower had an opportunity for notice and review of to work out a repayment plan. It says that the fact that limited disclosure of default information occurs only after the borrower is afforded substantial notice and procedural protection further demonstrates the borrower's privacy interest in this information and congressional recognition of such an interest. It says such limited disclosure cannot be used to justify general public disclosure of this information. SBA says that, because the News could carry out its "monitoring" operation without access to identifying information, plaintiff's motion should be denied, especially in light of the fact that SBA disaster loans are made, as authorized by statute, for terms of up to 30 years. 15 U.S.C. § 636(b). Defendant says that the private information of hundreds of SBA borrowers should not be jeopardized for the sake of a potential news story about a small few.

In response, plaintiff says that, in addition to the approximately 312 corporate borrowers who are not entitled to Exemption 6 protection, "virtually every taxpayer in the Western New York area will easily be able to identify public figures who have benefitted from the disaster loan program ...." Item 19, Affidavit of Attorney Andrea R. Polvino, ¶ 11. Plaintiff says that given the well known names of some of the borrowers, as well as the large amounts of unpaid balances suggesting a potential misuse of public funds, it is entitled to disclosure here.

With respect to defendant's arguments pursuant to the provisions of the Privacy Act, 5 U.S.C. § 552a, plaintiff argues that these provisions do not apply because the records involved here are not properly exempt from disclosure under the FOIA.

Pursuant to the logic articulated by plaintiff above, I find that the disclosure of the documents sought in this case would not constitute a "clearly unwarranted invasion of personal privacy" within the meaning of Exemption 6 of the FOIA. I also find, as plaintiff argues, that the provisions of the Privacy Act do not mandate a different conclusion here.

### III. Attorney's Fees

Finally, plaintiff has moved for attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E) for the costs and expenses incurred in prosecuting this action. *Weisberg v. United States Department of Justice,* 745 F.2d 1476 (D.C.Cir.1984), *rehearing denied,* 763 F.2d 1436 (D.C.Cir.1985); *Public Law Education Institute v. U.S. Department of Justice,* 744 F.2d 181 (D.C. Cir.1984). This motion is granted.

In summary, defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted. Plaintiff's motion for attorney's fees is also granted. By August 11, 1987, plaintiff shall deliver to this court a proposed judgment in addition to an affidavit in support of its application for attorney's fees. Defendant's response to these arguments, if any, shall be delivered to the court on or before August 25, 1987. Thereafter, this court shall meet with both parties' attorneys on September 2, 1987, at 9 a.m. to discuss the entry of final judgment in this case.

So ordered.